IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

BRYAN J. BAKER, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-11-421-KEW
 )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
 )
        Defendant. )

**OPINION AND ORDER**

Plaintiff Bryan J. Baker (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on March 20, 1981 and was 30 years old at the time of the ALJ's decision. Claimant completed his education through the eighth grade, taking special education classes. Claimant has no past relevant work. Claimant alleges an inability

to work beginning December 19, 2009 due to limitations resulting from learning disabilities, ADHD, PTSD, depression, mood swings, anxiety, hallucinations, suicidal thoughts, anger problems, hypertension, headaches, concentration and memory problems, sleep problems, back problems, and ankle problems.

## Procedural History

On December 22, 2009, Claimant protectively filed a fifth application for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, et seq.) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On June 10, 2011, an administrative hearing was held before ALJ Osly F. Deramus in McAlester, Oklahoma. On June 23, 2011, the ALJ issued an unfavorable decision. On October 28, 2011, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work with limitations.

4

## Errors Alleged for Review

Claimant asserts the ALJ committed error in finding Claimant did not meet a listing at step three. Alternatively, Claimant contends the ALJ failed to properly evaluate the opinion of Claimant's therapist.

## Step Three Analysis

In his decision, the ALJ found Claimant suffered from the severe impairments of disorders of the back and affective mood disorders. (Tr. 13). He determined Claimant retained the RFC to perform a full range of light work, finding he could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand/walk or sit for 6 hours in an 8 hour workday, occasionally stoop, crouch, crawl, kneel, and balance, occasionally climb stairs but not climb ladders. Due to psychologically based factors, the ALJ determined Claimant had some limitations but could understand, remember, and carry out simple instructions under routine supervision and could relate to supervisors and co-workers in an incidental manner for work-related purposes but could not relate to the general public. (Tr. 16). After consultation with a vocational expert, the ALJ determined Claimant retained the RFC to perform the representative jobs of food inspector. (Tr. 23). He concluded Claimant was not disabled. (Tr. 23-24).

Claimant first asserts that ALJ's evaluation of the criteria for Listing § 12.05C. To meet or equal Listing § 12.05C, a claimant must demonstrate the following:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> \* \* \*
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.
>
> \* \* \*

20 C.F.C. Pt. 404, Subpt. P, App. 1, Listing 12.05C.

Claimant must satisfy all of these required elements for a Listing to be met. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). On January 30, 2009, Claimant underwent a consultative mental health examination by Dr. Denise LaGrand. Dr. LaGrand administered the Wechsler Adult Intelligence Scale - 4th Edition. She concluded Claimant had a full scale IQ score of 70. (Attachment 3 to Claimant's brief at p. 4 of 6). While Dr. LaGrand found Claimant exaggerated the severity of psychopathology in an attempt to derive secondary gain, or lack of cooperation or random responding, it did appear to her that Claimant was "putting forth his best effort on the exam. He appeared to be exaggerating his psychological

symptoms for secondary gain. His cognitive and achievement scores are thought to be valid." (Attachment 3 to Claimant's brief at p. 5 of 6). Claimant would appear to meet the criteria under Listing § 12.05C of having an IQ of 70 and suffering from another severe mental or physical impairment, as the ALJ found Claimant suffered from the severe impairments of a back disorder and affective mood disorder. (Tr. 13).

In addition to these required findings, Claimant must also meet the "capsule definition" requirement that he have "significantly subaverage general intellectual functioning with deficits in adaptive functioning." § 12.05. The ALJ concluded Claimant lives independently, cares for his own personal needs, prepares meals, shops, pay his bills, and use public transportation which he found to be inconsistent with the degree of intellectual limitation Claimant alleges and the marked limitations indicated by Ms. Dorothy Hurley, Claimant's therapist. (Tr. 14).

Claimant cites to the case of Barnes v. Barnhart, 2004 WL 2681465 (10th Cir. (Okla.)). The Tenth Circuit rejected the ALJ's findings on deficits in adaptive functioning which were strikingly similar to the findings the ALJ made in this case. Instead, the Tenth Circuit recognized the Commissioner's directive that "ALJs choose and apply one 'of the measurement methods recognized and endorsed by [one of] the [four major] professional organizations' dealing with mental retardation. 67 Fed.Reg. at 20,022." Barnes,

7

2004 WL 2681465, 5 (10th Cir. (Okla.)). The Tenth Circuit explained the requirements in stating

> The Commissioner publicly announced in April 2002 that there are at least four possible definitions of "deficits in adaptive functioning"-from the four major professional organizations dealing with mental retardation. See 67 Fed.Reg. at 20,022. This is the first reference we found anywhere to a definition for the elements in the capsule definition in Listing 12.05, and it appeared long after the agency had issued its final decision in this case. Even so, the Commissioner expressly declined to adopt any particular one of these definitions because the four major organizations use somewhat different definitions and methods for assessing them. 67 Fed.Reg. at 20,022. The Commissioner considers the definition of mental retardation reflected in the listings to be consistent with these definitions, although not identical to any one of them, and "allow[s] use of any of the measurement methods recognized and endorsed by the professional organizations." Id. The ALJ in this case, however, essentially improvised his own definition for "deficits in adaptive functioning," which, as we have seen, was not supported by the evidence.
> On remand, the ALJ must choose a standard consistent with the Commissioner's directive. See id. For example, the American Psychiatric Association (APA) provides one definition for "deficits in adaptive functioning" in the DSM-IV. Id. The APA states that "deficits in adaptive functioning" are shown by "significant limitations in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." Id. The APA also provides a measurement standard: "[T]he criterion of significance is a summary index score that is two or more standard deviations below the mean. . . ." Id.

Barnes v. Barnhart, 2004 WL 2681465, 8 (10th Cir.(Okla.)).

The ALJ in this case appears to have employed his own definition under the "capsule definition" in a similar vein as occurred in the Barnes case. On remand, the ALJ must establish the

measurement standard he employed as required by the Commissioner's own directives and cite to the objective record as to any facts he finds to bear upon that standard.

This Court is also concerned that Listing § 12.05C requires that the onset of the mental retardation or limitation in intellectual function occur before the age of 22. Both Claimant and the ALJ shall strive to introduce evidence into the record either by implication or express finding the age of onset of Claimant's intellectual limitation.

Since Claimant arguments concerning the ALJ's consideration of Ms. Hurley's report "in the alternative", this Court will not address this matter further in this Opinion and Order, given Claimant's successful reversal on the primary argument in his brief.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 25th day of March, 2013.

*[signature]*
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE